# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
                                              :
In re:                                        :      Chapter 11
                                              :
PES HOLDINGS, LLC, et al.,¹                   :      Case No. 18-18-10122 (KG)
                                              :
                              Debtors.        :      Joint Administration Requested
                                              :      Re Dkt # 22
-----------------------------------------------------------x
```

## INTERIM ORDER
## (I) AUTHORIZING CONTINUATION OF PREPETITION
## INTERMEDIATION AGREEMENTS, (II) AUTHORIZING
## THE DEBTORS TO ENTER INTO AND PERFORM POSTPETITION
## INTERMEDIATION TRANSACTIONS, (III) PROVIDING SUPERPRIORITY
## ADMINISTRATIVE EXPENSE STATUS IN RESPECT OF INTERMEDIATION
## TRANSACTIONS, (IV) PROVIDING FIRST PRIORITY LIENS IN RESPECT OF
## SECURED INTERMEDIATION CONTRACTS, (V) MODIFYING THE AUTOMATIC
## STAY, (VI) SETTING A FINAL HEARING AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")² of Philadelphia Energy Solutions Refining and

Marketing LLC ("Refining" or "PESRM") and its subsidiary, PES Administrative Services,

LLC, that is a debtor and debtor in possession in the above-captioned cases ("Admin" and,

together with Refining, the "Refining Debtors" and, together with the other debtors and debtors

in possession in the above-captioned chapter 11 cases, collectively, the "Debtors") for entry of an

interim order (this "Interim Order") (a) authorizing continuation of prepetition intermediation

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard Financing, LLC (6284); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Logistics GP, LLC (9202); PES Logistics Partners, L.P. (1288); PESRM Holdings, LLC (2107); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

² Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

agreements (the "Intermediation Contracts"),[3] (b) authorizing the Refining Debtors to enter into and perform postpetition intermediation transactions, (c) providing superpriority administrative expense status in respect of intermediation transactions, (d) providing first priority liens in respect of secured Intermediation Contracts (as defined in the Motion, the "Secured Intermediation Contracts"), (e) modifying the automatic stay, (f) setting a final hearing, and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Refining Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, THE COURT HEREBY FINDS THAT:

A.        Prior to the Petition Date, the Refining Debtors entered into with their counterparties, the Amended and Restated Supply and Offtake Agreement, dated as of October 7, 2014, by and among Refining, Admin and Merrill Lynch Commodities, Inc. ("MLC")

---

[3]    A schedule of the Intermediation Contracts (as amended or amended and restated pursuant to the Assurance Agreement (as defined below)) is attached to the Motion as Schedule 1.

(as amended, and together with the related ancillary agreements, the "Prepetition Intermediation Agreement") and intermediation transactions pursuant to the Intermediation Contracts. Prepetition, pursuant to the Prepetition Security Agreement, the Refining Debtors granted liens and security interests in certain collateral (the "SOA Prepetition Collateral") to the Protected Counterparties (the "SOA Prepetition Liens") to secure the Refining Debtors' obligations to Protected Counterparties in connection with the Prepetition Intermediation Agreement. Utilization of Intermediation Contracts, and the conducting of business pursuant to the terms of the Intermediation Contracts, is necessary to the Refining Debtors' ability to engage in regular business operations.

B.    The Refining Debtors intend to enter into the Assurance and Third Omnibus Amendment Agreement annexed as **Exhibit A** to this Interim Order (the "Assurance Agreement") with, among other parties, PESRM, MLC and PES Inventory Company, LLC ("PESIC"),[4] for the purpose of, among other things, obtaining the Protected Counterparties' agreement to continue intermediation activities under the Intermediation Contracts after the Petition Date. The conditions to the effectiveness of the amendments to the Intermediation Contracts made by the Assurance Agreement will include the entry of this Interim Order, the execution and delivery of the Postpetition Intermediation Agreement between Refining, Admin and MLC, and the Postpetition Security Agreement between Refining and MLC in its capacity as SOA Collateral Agent.

C.    The Assurance Agreement provides, among other things, the parameters under which the Protected Counterparties to the Intermediation Contracts will agree to continue their

---

[4]    PESIC and MLC (both individually and in its capacity as SOA Collateral Agent (as defined in the Prepetition Security Agreement and the Postpetition Security Agreement, as applicable)) are referred to herein each as a "Protected Counterparty" and collectively as the "Protected Counterparties").

relationships with the Refining Debtors under the Intermediation Contracts following the Petition Date for the period and on the terms described therein. The Assurance Agreement further indicates the Refining Debtors' desire and intent to conduct postpetition intermediation activities in the ordinary course of business and grant appropriate credit support to the Protected Counterparties.

D. The Refining Debtors are willing to enter into the Assurance Agreement and grant certain protections to the Protected Counterparties because the Intermediation Contracts are integral to the on-going and future success of the Refining Debtors' operations and maintaining the value of the Refining Debtors' estates.

E. Absent immediate entry of this Interim Order, the Protected Counterparties would assert and exercise their contractual rights to liquidate or terminate the Secured Intermediation Contracts pursuant to sections 556 and/or 560 of the Bankruptcy Code, as the case may be.

F. All cash collateral provided by the Refining Debtors to the Protected Counterparties (whether prepetition or postpetition) to secure obligations owing to the Protected Counterparties in connection with the Secured Intermediation Contracts: (x) are proceeds from RINs sales or other MLC Separate Assets and Collateral and JPMVEC Separate Assets and Collateral (including the cash proceeds provided under Section 3.5 of the Postpetition Security Agreement and Section 3.5 of the SOA Security Agreement), (y) are identifiable and constitute traceable proceeds of MLC Separate Assets and Collateral and JPMVEC Separate Assets and Collateral, and (z) constitute MLC Separate Assets and Collateral and JPMVEC Separate Assets and Collateral.

G. The Protected Counterparties will not agree to maintain existing positions, continue intermediation activities, or engage in new intermediation activities solely on the basis

of an unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code.

H.    As a result, the Refining Debtors seek to provide to the Protected Counterparties: (1) superpriority administrative expense status pursuant to section 364(c)(1) of the Bankruptcy Code with respect to all of the Refining Debtors' obligations under Intermediation Contracts (whether arising prepetition or postpetition); and (2) with respect to the Refining Debtors' obligations under Secured Intermediation Contracts, the security interests and liens described herein consistent with the terms of the Secured Intermediation Contracts and the Assurance Agreement, to secure the Refining Debtors' obligations under the Secured Intermediation Contracts, whether arising prepetition or postpetition, to protect the Protected Counterparties from the risk of the Refining Debtors' nonperformance.

I.    The transactions contemplated by the Intermediation Contracts (as amended by the Assurance Agreement) are necessary to preserve and maximize the value of the Refining Debtors' estates.

J.    The terms of the Assurance Agreement are fair, reasonable, and adequate given that the Refining Debtors are in chapter 11 and their current financial condition.

K.    The relief requested in the Motion is necessary, essential and appropriate for the continuation of the Refining Debtors' operations.

L.    The Assurance Agreement was negotiated in good faith and at arm's length between the Refining Debtors and the Protected Counterparties, and any credit extended pursuant to the Assurance Agreement or in connection with intermediation transactions by the Protected Counterparties is deemed to have been extended or made in good faith within the meaning of section 364(e) of the Bankruptcy Code.

M.     The relief granted by this Court pursuant to this Interim Order is necessary to avoid immediate and irreparable harm and injury to the Refining Debtors' estates and creditors.

N.     At or before the Hearing to grant the interim relief requested herein, each of the parties set forth below received notice of the Motion whether by telephone, email, telecopy, overnight delivery or by hand delivery: to (i) the Office of the United States Trustee for Region III (the "U.S. Trustee"), (ii) the holders of the 50 largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to the DIP Agent, (iv) counsel to the DIP Lenders, (v) counsel to the Refining ABL Agent, (vi) counsel to the Refining TLB Agent, (vii) counsel to the Logistics Agent,[5] (viii) counsel to MLC, (ix) counsel to BTO Commodities, L.P. and PES Inventory Company, LLC, (x) the Internal Revenue Service, (xi) all parties known by the Debtors to hold or assert a lien on any asset of any Debtor, (xii) all relevant state taxing authorities and (xiii) all of the Debtors' landlords, and owners and/or operators of premises at which any of the Debtors' inventory and/or equipment is located, and owners and/or operators of premises at which any of the Debtors' inventory and/or equipment is located, and it appearing that no other or further notice need be provided; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion; and the Interim Hearing having been held by the Court on January 23, 2018; and the relief requested in the Motion being in the best interests of the Refining Debtors, their creditors and their estates and all other parties in interest in the Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth

---

[5]    The Logistics Agent is PNC Bank, National Association, as collateral agent to that certain Credit Agreement, dated as of November 24, 2015, by and among North Yard Logistics, L.P. ("Logistics"), as borrower, North Yard GP, LLC, as guarantor, and the lender parties thereto (collectively, the "Logistics Lenders").

in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, and at the Interim Hearing and after due deliberation and sufficient cause appearing therefor;

It is now therefore FOUND, DETERMINED, ORDERED AND ADJUDGED THAT:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. Such notice is adequate and proper under the circumstances of this case.

3. Good, adequate, and sufficient cause has been shown to justify the granting of the interim relief herein, and the immediate entry of this Interim Order.

4. The Assurance Agreement, including those terms relating to (i) the Protected Counterparties' agreement to delay the exercise of remedies and (ii) amendments to or restatements of the Intermediation Contracts, is hereby approved, and the Refining Debtors are authorized to enter into the Assurance Agreement and perform their obligations thereunder. Without limiting the foregoing, the sales contemplated by sections 3.5(b) and 3.5(c) of the Postpetition Security Agreement, and performance of the Second Cash Collateral Transfer Obligation and Third Cash Collateral Transfer Obligation (as defined therein), including the direct transfer of sale proceeds to the SOA Cash Collateral Account as contemplated by the Postpetition Security Agreement, are hereby approved.

5. The Refining Debtors are hereby authorized (and each Protected Counterparty shall be entitled to rely upon such authorization) to engage in intermediation activities without further order of the Court, including engaging in intermediation activities pursuant to the terms of the Intermediation Contracts as amended by the Assurance Agreement, both in connection with existing transactions and by entering into new transactions, including any and all terms relating to collateral, offsetting, netting and/or cross-netting.

6.     With respect to each Protected Counterparty, the Refining Debtors shall perform all obligations arising under Intermediation Contracts (as amended by the Assurance Agreement), whether arising prepetition or postpetition, including (i) the making of all payments when due, including payments due for prepetition deliveries, postpetition deliveries on account of existing positions, postpetition deliveries on account of postpetition intermediation activities, financial product payments, liquidated damages for failure to make or receive delivery and/or payments, and payment of fees (including working capital fees) and expenses (including professional fees), (ii) providing collateral in connection with existing positions, including with respect to prepetition or postpetition market movements, and (iii) providing collateral in connection with intermediation activities (whether prepetition or postpetition). The Intermediation Contracts shall not be rejected pursuant to section 365 of the Bankruptcy Code or otherwise.

7.     Notwithstanding anything to the contrary in this Interim Order, or the DIP Orders, the relative priority of each lien granted in this Interim Order and the DIP Orders[6] shall be as set forth in Exhibit B attached to this Interim Order; *provided*, for the avoidance of doubt, that each such lien shall be subject and subordinate to the payment of the Carve Out (as defined in the DIP Orders) and the Superpriority Carve Out Funding Lien in all respects.

8.     Subject to the Carve Out (as defined in the DIP Orders), the Protected Counterparties are each hereby granted an allowed superpriority administrative expense claim in accordance with Bankruptcy Code section 364(c)(l) (the "Intermediation Superpriority Claims")

---

[6] "Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c)*; and together with the Final DIP Order (as defined below), the "DIP Orders."

against each Refining Debtor, on a joint and several basis, with priority in payment over any and all administrative expenses at any time existing or arising, of any kind or nature whatsoever, for the obligations, liabilities and indebtedness of the Refining Debtors arising postpetition under or related to Intermediation Contracts or the Assurance Agreement, including any claims of MLC in its capacity as SOA Collateral Agent or in its individual capacity for losses and costs incurred in connection with the liquidation of collateral, which shall be paid and calculated under the terms set forth in the Intermediation Contracts subject to the priorities set forth in **Exhibit B** of this Interim Order.

9. As adequate protection and as security and assurance of the Refining Debtors' obligations arising under the Secured Intermediation Contracts (whether arising prepetition or postpetition) (the "Secured Intermediation Obligations") and subject to the Carve Out, immediately upon, and effective as of entry of this Interim Order, the Protected Counterparties are granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens on (collectively, the "SOA Priority Liens") all prepetition and postpetition property of the Refining Debtors and their estates (including cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries wherever located and the proceeds, products, rents and profits of the foregoing) (collectively, the "Refining Collateral") as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations of the Refining Debtors

pursuant to the Secured Intermediation Contracts, and at all times subject to the Intercreditor Agreement, dated as of April 4, 2013, among Bank of America, N.A. ("BANA"), as ABL Agent, JPMorgan Chase Bank, N.A., as Term Loan Agent, MLC, as Supply and Offtake Secured Party, and PESRM (the "TLB Intercreditor Agreement") and the Amended and Restated Intercreditor Agreement, dated as of October 7, 2014 among PESRM, the other grantors party thereto, BANA, as Revolving Collateral Agent, and MLC, as SOA Collateral Agent and as MLC (the "Amended and Restated Intercreditor Agreement" and together with the TLB Intercreditor Agreement, collectively, the "Prepetition Intercreditor Agreements"). The Secured Intermediation Obligations shall be deemed to be "Supply and Offtake Obligations" for all purposes under the Prepetition Intercreditor Agreements, subject to the other terms and provisions of this Interim Order. No provision of this Interim Order will be deemed to waive, abridge or otherwise adversely modify the rights of the "Supply and Offtake Secured Parties" (as defined in the Prepetition Intercreditor Agreements as in effect on the Petition Date) under the Prepetition Intercreditor Agreements.

10. Upon entry of the Final Order, without any further action by the Debtors or any other party and as a condition to the continuation of the Intermediation Contracts: (1) all of the Refining Debtors' prepetition obligations under the Intermediation Contracts shall be converted into Intermediation Superpriority Claims and (2) all of the Refining Debtors' prepetition obligations under the Secured Intermediation Contracts shall be secured by the SOA Priority Liens.

11. To secure the Secured Intermediation Obligations, immediately upon, and effective as of entry of this Interim Order, the Protected Counterparties are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected

SOA Priority Liens in the Refining Collateral as follows, subject and subordinate to payment of the Carve Out, and in all respects consistent with and subject to the priorities set forth in **Exhibit B** of this Interim Order (and, to the extent not inconsistent with such **Exhibit B**, the Prepetition Intercreditor Agreements):

i.      pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Catalyst Assets[7];

ii.      pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected second priority liens on and security interests in all Refining Collateral, other than the Catalyst Assets, that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date, subordinate to the DIP Liens;

iii.      pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all Refining Collateral (other than as set forth in clauses (i), (ii) and (iv) of this paragraph), subject to the Permitted Liens (as defined in the Postpetition Intermediation Agreement), and

iv.      pursuant to section 364(d)(l) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all Refining Collateral that is secured by a lien (the "Secured Refining Collateral") that also constitutes SOA Prepetition Collateral, wherever located.

12.      Except with respect to payment of the Carve Out or as expressly set forth herein and in the DIP Orders, the SOA Priority Liens and the Intermediation Superpriority Claims: (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in these Chapter 11 Cases, or any Successor Cases, and shall be valid and enforceable against the Refining Debtors, their estates, any trustee or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or

---

[7]   "Catalyst Assets" means all catalyst assets and inventory, precious metals assets and precious metals inventory and all additions, accessions and all rights and privileges related thereto.

upon the dismissal of any of these Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Refining Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c) (subject to entry of the Final Order), 510, 549, 550 or 551 of the Bankruptcy Code.

13. Under the circumstances and given that the adequate protection described in this Interim Order is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Protected Counterparties; provided, that any of the Protected Counterparties upon a material change in circumstances, may request further or different adequate protection, and the Refining Debtors or any other party may contest any such request and all rights with respect thereto are expressly reserved and preserved in all respects.

14. The Protected Counterparties are hereby granted, subject to payment of the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code with, except as set forth in this Interim Order and in the DIP Orders, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any other provision of the Bankruptcy Code (the "SOA 507(b) Claim").

15. As provided in **Exhibit B** to this Interim Order and subject to the Carve Out, no lien or security interest, whether senior, pari passu or junior to the security interests of the Protected Counterparties, shall be granted with respect to the MLC Separate Assets and Collateral (as such term is defined in the Amended and Restated Intercreditor Agreement) or the JPMVEC Separate Assets and Collateral (as such term is defined in the TLB Intercreditor Agreement), including any proceeds thereof.

16.     The Protected Counterparties may net amounts and obligations under Intermediation Contracts against amounts and obligations under other Intermediation Contracts and postpetition intermediation transactions with the Refining Debtors and vice versa. In this regard, there shall be no distinction between transactions entered into prepetition and postpetition. To the extent necessary, the automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the exercise by Protected Counterparties of all such netting rights.

17.     Pursuant to the Assurance Agreement the Protected Counterparties have agreed to forbear, but not waive, enforcement of their "safe harbor" rights under sections 556 and/or 560 of the Bankruptcy Code. The Protected Counterparties shall not be deemed to have waived or improperly delayed in exercising such "safe harbor" rights in the event any of the conditions to waiver set forth in the Assurance Agreement (including that a Final Order, in form and substance acceptable to each of MLC and PESIC acting in their sole discretion, shall have been entered no later than the earlier of: (i) 45 days after the Petition Date or (ii) the date of entry of the Confirmation Order) are not met, and such rights are preserved and may be enforced by the Protected Counterparties in such event.

18.     If any or all of the provisions of this Interim Order are stayed, modified in a manner adverse to a Protected Counterparty or vacated, or this Interim Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity or priority of any indebtedness, obligation or liability incurred by the Refining Debtors to each of the Protected Counterparties before the receipt of written notice by the Protected Counterparties of the effective date of such stay, modification or vacation, (b) the validity, priority or enforceability of the security interests and netting and termination rights authorized or created hereby or pursuant to the Intermediation Contracts or any related documents, and (c) the rights of

the Protected Counterparties to exercise remedies as set forth in the Intermediation Contracts or the Assurance Agreement as the case may be, and each Protected Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

19. To the extent that the value of prepetition collateral (including, with respect to letters of credit, the face amount of the letter of credit) pledged to or for the benefit of a Protected Counterparty exceeds the aggregate amount of obligations owing by a Refining Debtor to such Protected Counterparty on account of existing positions (including amounts owing on account of market movements), such excess value shall secure all obligations owing by the Refining Debtor to such Protected Counterparty on account of the Refining Debtors' intermediation activities pursuant to the terms of the Secured Intermediation Contracts. To the extent that any prepetition collateral is insufficient to secure any Refining Debtor's obligations to any one or more Protected Counterparties under the Secured Intermediation Contracts, and/or a Refining Debtor is required to post collateral under a Secured Intermediation Contract, the Refining Debtors individually and/or collectively are authorized to provide additional collateral to secure such obligations to all Protected Counterparties without further order of the Court; provided, that the Refining Debtors shall not provide any such additional collateral without the consent of the DIP Commitment Parties (as defined in DIP Motion).

20. Notwithstanding anything to the contrary in section 562 of the Bankruptcy Code, the determination of any damages, settlement payments, or termination payments owing under any Intermediation Contract (including the timing of measurement or calculation of any such damages, settlement payments or termination payments) shall be made pursuant to the terms of such Intermediation Contract.

21.     All of the Intermediation Contracts collectively between a Refining Debtor and a Protected Counterparty shall constitute a single unified contract and integrated agreement.

22.     Solely with respect to Protected Counterparties, to the extent applicable, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to allow enforcement of rights and remedies by any Protected Counterparty under the Intermediation Contracts (as amended by the Assurance Agreement), including suspension of performance, termination, liquidation, acceleration, setoff, netting, giving of any notices necessary or appropriate pursuant to the Intermediation Contracts, giving instruction to owners or operators of third party infrastructure facilities regarding the Protected Counterparties' collateral, realization (including sale) of collateral upon termination, and rights to require the Refining Debtors to use reasonable best efforts, at their own expense, to process any PESRM crude oil inventory into refined products, and the Protected Counterparties' rights thereunder shall not be modified, stayed, avoided or otherwise limited by order of the Bankruptcy Court or any court proceeding under the Bankruptcy Code. Without limiting the foregoing, the relief provided in this paragraph shall apply to, among other things:

- Any rights ("Termination Rights") of a Protected Counterparty to terminate or liquidate any or all Secured Intermediation Contracts or any or all transactions and/or collateral posted thereunder, including any right to terminate or liquidate if: (i) the Final Order, in form and substance acceptable to each of MLC and PESIC, each acting in their sole discretion, is not entered by the earlier of: (a) 45 days after the Petition Date or (b) the date of entry of the Confirmation Order, (ii) a final order that approves the DIP Facility and that is in form and reasonably substance acceptable to each of MLC and PESIC, each acting in their sole discretion (the "Final DIP Order"), is not entered by the Bankruptcy Court, or such DIP Facility has not been fully funded by the lenders thereto, in each case within 45 days of the Petition Date, (iii) no reorganization plan acceptable to each of MLC and PESIC, each acting in their sole discretion, has been confirmed and has become effective on or prior to July 30, 2018; provided, that any such reorganization plan that: (a) provides for payment in full, in cash, on the effective date thereof, of all obligations of the Refining Debtors to Protected Counterparties under Intermediation Contracts then due and owing, (b) provides for posting of cash collateral to Protected Counterparties on the effective date of such plan, in an amount necessary to secure all obligations of the

15

Refining Debtors under Intermediation Contracts that are not yet due and owing, and (c) does not require the provision of an intermediation facility by MLC or PESIC after the effective date of such plan shall be deemed to be acceptable to MLC and PESIC, (iv) the Refining Debtors fail to satisfy any of their material obligations (including credit support obligations) under the Intermediation Contracts, the Assurance Agreement, this Interim Order or, following its entry, the Final Order, (v) the Refining Debtors move to reject an Intermediation Contract or such Intermediation Contract is rejected under section 365(a) of the Bankruptcy Code, (vi) any Debtor declares itself to be, or is found by the Bankruptcy Court to be, administratively insolvent, or any Debtor declares that it does not intend to pay allowed administrative expense claims in full, (vii) the Debtors move or support a motion seeking to convert any Debtor's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code or dismissing any Debtor's bankruptcy case, (viii) the Bankruptcy Court enters an order converting any Debtor's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code or dismissing any Debtor's bankruptcy case, (ix) the Bankruptcy Court enters an order, or any Debtor files or supports an application, motion or request for an order, directing the appointment under section 1104 of the Bankruptcy Code of (1) a trustee or (2) an examiner or any other person with enlarged powers relating to the operation of the business of any Debtor (i.e., powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code), (x) any debtor-in-possession financing facility under which any Debtor is obligated to perform is accelerated by the lender or the lender's agent or otherwise matures and remains unpaid, (xi) [Reserved]; (xii) any Debtor has, a receiver, custodian, trustee or liquidator appointed over all or a substantial portion of its assets or is subject to such an appointment or to any similar proceeding under the laws of any jurisdiction; (xiii) any Debtor files or supports a motion, proposed plan or other pleading, or any order is entered in the bankruptcy case or elsewhere, that in any material way affects, impairs, or limits (including the imposition of any stay or injunction), directly or indirectly, the Protected Counterparties' rights or the Refining Debtors' obligations under the Intermediation Contracts, the Assurance Agreement, this Interim Order or the Final Order or the validity, priority or enforceability of any security interests or claims granted to the Protected Counterparties pursuant to this Interim Order or the Final Order, (xiv) this Interim Order or, following its entry, the Final Order, shall cease to be in full force and effect; (xv) this Interim Order or, following its entry, the Final Order, shall have been, directly or indirectly, affected, impaired, limited, reversed, stayed, vacated or subjected to a stay pending appeal or otherwise modified in any way materially adverse to the Protected Counterparties, (xvi) an order is entered by the Bankruptcy Court requiring MLC or PESIC to disgorge any payment received by it under any Intermediation Contract or any Debtor moves for the disgorgement of any payment received by MLC or PESIC under any Intermediation Contract, whether such payment is received prior to, on or after the Petition Date, (xvii) the Interim DIP Order and, upon its entry, the Final DIP Order, are modified or amended in any way that affects any Termination Rights, or that is otherwise materially adverse to any Protected Counterparty, without the prior written consent of such Protected Counterparty, (xviii) the RSA is terminated, (xix) the Interim DIP Order, in form and substance reasonably acceptable to each of MLC and PESIC, each acting in their sole discretion, is not entered by the Bankruptcy Court, or the DIP Facility has not been funded in the amount of at least $120,000,000, in each case within 5 business days of the Petition Date, *provided*,

that the form of the proposed Interim DIP Order filed on the docket [Docket No. [●]] is deemed to be in form and substance reasonably acceptable to each of MLC and PESIC, (xx) the Second Cash Collateral Transfer Obligation has not been satisfied by 4:00 p.m. prevailing Eastern Time on Friday, January 26, 2018, (xxi) the Third Cash Collateral Transfer Obligation has not been satisfied by 4:00 p.m. prevailing Eastern Time on Tuesday, May 1, 2018, (xxii) any Intermediation Contract shall be assigned by any Refining Debtor to any third party without the prior written consent of the other party or parties, as applicable, to such Intermediation Contract, (xxiii) no reorganization plan acceptable to each of MLC and PESIC, each acting in their sole discretion, has been confirmed and has become effective on or prior to August 30, 2018; provided, that any such reorganization plan that: (a) provides for payment in full, in cash, on the effective date thereof, of all obligations of the Refining Debtors to Protected Counterparties under Intermediation Contracts then due and owing (b) provides for posting of cash collateral to Protected Counterparties on the effective date of such plan, in an amount necessary to secure all obligations of the Refining Debtors under Intermediation Contracts that are not yet due and owing, and (c) does not require the provision of an intermediation facility by MLC or PESIC after the effective date of such plan shall be deemed to be acceptable to MLC and PESIC, (xxiv) any motion or other pleading is filed by a Debtor proposing a transaction (other than the transactions expressly contemplated by the Prepackaged Plan) for the sale of the Refinery (through a sale of assets, sale of substantially all assets, merger, reorganization or otherwise) without (a) also selling all inventory constituting collateral securing obligations owed to the Protected Counterparties as part of such transaction and (b) providing payment in full in cash of all amounts owed to MLC and PESIC from such sale proceeds or otherwise, (xxv) the exclusive period for any Debtor to file, or solicit acceptances for, a plan of reorganization shall have terminated or expired, (xxvi) the Bankruptcy Court enters an order or orders granting relief from the automatic stay under section 362 of the Bankruptcy Code with regard to any assets of the Debtors and such relief would have or could reasonably be expected to have a material adverse effect, (xxvii) noncompliance by any Debtor with any of the material terms of the Interim Order or the Final Order; or (xxviii) the Debtors seek to adversely alter or otherwise affect, by any amendment, modification, supplement, extension, renewal, restatement, or refinancing of any pre or postpetition indebtedness, the security interests and superpriority administrative expenses provided by this Interim Order.

- No Termination Right will arise under any Secured Intermediation Contract unless the Protected Counterparty to such contract gives Refining and, if applicable, Admin three (3) business days' prior written notice by email to Refining, and, if required under the relevant contract, Admin, to cure any condition that, after the giving of such notice and the lapse of such cure period, will give rise to a Termination Right, *provided*, that in the case of the Termination Rights described in subsections (i), (iii), (viii), (x), (xiv), (xix), (xx), (xxi), (xxiii) and (xxv) above, no notice requirement or opportunity to cure shall apply.

- Subject to the satisfaction of any applicable notice requirement and/or the lapse of any applicable cure period, on and after the time when a Termination Right arises under any Secured Intermediation Contract, each Protected Counterparty to such contract shall be

entitled to immediately exercise rights and remedies to suspend performance, terminate commitments, terminate, liquidate and/or accelerate transactions, offset or net termination values or payment amounts and/or apply any cash collateral in its possession or control (collectively, the "Immediate Exercise Rights and Remedies"), each in accordance with the terms of the applicable contract; provided, however, that the exercise of such Immediate Exercise Rights and Remedies shall in no way limit the Debtors' ability to contest whether any such event has occurred or seek recourse against any such Protected Counterparty for any wrongful exercise of such rights; provided, further, that for the avoidance of doubt, such Immediate Exercise Rights and Remedies shall not apply to any Refining Collateral in the Debtors' possession.

- With respect to all rights and remedies other than the Immediate Exercise Rights and Remedies, provided for in the Intermediation Contracts and under applicable law (the "Rights and Remedies"), unless the Bankruptcy Court orders otherwise during the Remedies Notice Period (as defined below), upon the occurrence of any default, event of default, additional event of default, termination event or additional termination event (including any Termination Right) under any Intermediation Contract and the giving of five (5) business days' prior written notice (which shall run concurrently with any notice required to be provided under the applicable Intermediation Contract or otherwise in this Interim Order) (the "Remedies Notice Period") via email to Refining, and, if required under the terms of the relevant Intermediation Contract, Admin, and counsel to Refining and, if applicable, Admin (and, upon receipt, Refining shall promptly provide a copy of such notice to lead counsel for the Creditors' Committee, if any, and the U.S. Trustee), Protected Counterparties may exercise such rights and remedies.

- In any hearing regarding any exercise of any rights or remedies under the Intermediation Contracts, the only issues that may be raised by any party in opposition thereto shall be (i) whether, in fact, the relevant default, event of default, additional event of default, termination event or additional termination event has occurred and (ii) whether the proposed exercise of such right or remedy is in accordance with the terms of the Intermediation Contracts.

- Any rights of a Protected Counterparty under the Secured Intermediation Contracts to dispose of, or to cause the SOA Collateral Agent to appoint a Protected Counterparty or third party designated by a Protected Counterparty to conduct a liquidation proceeding (the "Liquidation Agent") to dispose of, their collateral consisting of hydrocarbon inventories, and the liquidation of such collateral by such Protected Counterparty or Liquidation Agent, in each case in accordance with the terms of the Secured Intermediation Contracts and notwithstanding any applicable law (including the Uniform Commercial Code) that is inconsistent with the collateral disposition provisions of the Secured Intermediation Contracts.

23. Subject to the terms of the MLC-PESIC Secured Prepay ISDA Master Agreement, MLC shall control the exercise of any such Termination Rights by MLC and PESIC

and the calculation of the claims of MLC and PESIC shall be made in accordance with the terms of the Intermediation Contracts (as amended by the Assurance Agreement).

24.     Following termination of the Intermediation Contracts, the Refining Debtors shall use reasonable best efforts to cooperate with the liquidation of MLC's and PESIC's collateral at the direction of the Liquidation Agent, SOA Collateral Agent and/or MLC, as applicable, including the agreement to refine crude oil inventory into refined products. The provisions of the Intermediation Contracts (as amended by the Assurance Agreement) relating to liquidation of collateral by the Liquidation Agent, SOA Collateral Agent and/or MLC, as applicable, are hereby approved, including those relating to: (i) the appointment of a Liquidation Agent, (ii) the process for proposing a plan for inventory dispositions, and the notification, comment period and Bankruptcy Court dispute resolution procedures relating to such plans and (iii) reporting by the Liquidation Agent or MLC, as applicable regarding the progress of such collateral dispositions.

25.     Without limiting any other provision of this Interim Order, the provisions of sections 11 and 12 of the Framework and Collateral Agency Agreement dated as of October 7, 2014, as amended, between MLC, and PESIC (including those provisions that, following any exercise of the Termination Rights, will permit MLC to determine the early termination amount under the 2002 ISDA Master Agreement, dated as of October 7, 2014, between PESRM and PESIC, file one or more claims against PESRM in respect of such early termination amount and require PESIC to transfer such secured claims to MLC upon request) are hereby approved.

26.     Upon entry of the Final Order: (i) the Debtors waive the right and shall not seek relief, including under section 105(a) of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of any Protected Counterparty under the Intermediation Contracts (as amended by the Assurance Agreement) or this Interim Order;

*provided*, that such waiver shall not preclude the Debtors from contesting whether a default has occurred under any Intermediation Contract, (ii) in no event shall the Protected Counterparties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Refining Collateral, and (iii) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the any claims of the Protected Counterparties.

27.     Upon entry of the Final Order, no costs or expenses of preserving or disposing of any collateral of the Protected Counterparties (including any fees and expenses described in paragraph 29 below) shall be imposed on any Protected Counterparty or recoverable from any such collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of such Protected Counterparty, and no such consent shall be implied from any action, inaction or acquiescence by any Protected Counterparty. The Protected Counterparties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person (as defined in the Interim DIP Order) incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Noting in this Interim Order or otherwise shall be construed to obligate the Protected Counterparties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

28.     Without limiting any other provision of this Interim Order, any claims arising from the termination of Intermediation Contracts shall be determined in accordance with the terms of such Intermediation Contracts.

29.     Notwithstanding anything to the contrary in the DIP Orders, upon the occurrence of any event of default, additional event of default, termination event or additional termination event (including any Termination Right) and the acceleration of the obligations under any Intermediation Contract, the Protected Counterparty to such Intermediation Contract shall be

entitled to send a Carve Out Trigger Notice, as defined in, and subject to the procedures set forth in, Paragraph 7 of the Interim DIP Order.

30. The Debtors may sell, exchange, convey, use or otherwise transfer any RINs (a "RINS Disposition" owned or acquired by any Debtor (whether prepetition or postpetition), *provided*, that the Debtors shall provide adequate protection to MLC and PESIC with respect to any such RINs Disposition, or shall otherwise obtain their prior written consent, *provided, further* that, to the extent a Court order has been entered, and is not subject to any stay of effectiveness, determining that the RIN Liabilities (as defined in the Prepackaged Plan) do not vest in the Purchaser (under a Sale Transaction) or the Reorganized Debtors (under a Reorganization Transaction) (such order, a "RINs Order"), the Debtors may effect a RINs Disposition and shall not be subject to the foregoing provision. Nothing in this paragraph shall prohibit or otherwise limit PESRM from retiring RINs to satisfy its RVO (as defined in the Postpetition Intermediation Agreement).

31. Upon entry of the Final Order, except as otherwise provided in the Intermediation Contracts, the Assurance Agreement or this Interim Order, each of the Debtors and the Debtors' estates, on their own behalf and on behalf of each of their predecessors, their successors, and assigns shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, waive and discharge each of the Protected Counterparties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, predecessors and predecessors in interest, each in their capacities as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations,

actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof arising out of, relating to, or in connection with (a) any of the Intermediation Contracts (including the Assurance Agreement) or the transactions contemplated thereunder or (b) this Interim Order, including: (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens of the Protected Counterparties, subject to a Challenge Proceeding during the Challenge Period (as defined herein).

32.      Without prejudice to the rights of any other party in interest (subject to the limitations thereon contained in the proviso to this paragraph below), the Debtors admit, stipulate and agree (the "Stipulations") that:

(a) (i) as of the Petition Date, (A) the Refining Debtors were justly and lawfully indebted and liable to the Protected Counterparties, without defense, counterclaim or offset of any kind, for all obligations pursuant to, and in accordance with the terms of, the Intermediation Contracts, plus accrued and unpaid interest thereon together with amounts due and owing in connection with other thereunder and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Intermediation Contracts), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Intermediation

Contacts (collectively, the "Intermediation Obligations"), (ii) the Intermediation Obligations constitute the legal, valid and binding obligations of the Refining Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (iii) no portion of the Intermediation Obligations or any payments made to the Protected Counterparties or applied to or paid on account of the obligations owing under the Intermediation Contracts prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b) the SOA Prepetition Liens, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the MLC Separate Assets and Collateral and JPMVEC Separate Assets and Collateral, (ii) valid, binding, perfected, enforceable, junior-priority liens and security interests in the Term Loan Priority Collateral and the ABL/SOA Priority Collateral, (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law and (iv) as of the Petition Date, subject and subordinate only to (A) the Carve Out, (B) in the case of the Term Loan Priority Collateral, the liens and security interests in favor of the Refining TLB Secured Parties (as such term is defined in the Interim DIP Order), and (C) in the case of the ABL/SOA Priority Collateral, the liens and security interests in favor of the Refining ABL Secured Parties (as such term is defined in the Interim DIP Order);

(c) none of the Protected Counterparties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are

conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Intermediation Contracts;

(d) no claims or causes of action exist against, or with respect to, the Protected Counterparties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

(e) the Protected Counterparties could not be compelled to continue to perform under the Intermediation Contracts following the Petition Date. In this regard, the Debtors acknowledge, and upon entry of the Final Order this Court finds, that: (i) the Protected Counterparties are "forward contract merchants" and/or "swap participants" as such terms are used in sections 556 and/or 560 and defined in section 101 of the Bankruptcy Code; (ii) the Secured Intermediation Contracts by and between the Debtors and the Protected Counterparties are "forward contracts" and/or "swap agreements," as the case may be, as such terms are defined in sections 101 of the Bankruptcy Code and, as such, are therefore "Safe Harbor" contracts under the applicable provisions of the Bankruptcy Code. As Safe Harbor contracts, the right of Protected Counterparties to cause the liquidation and/or termination of the Intermediation Contracts because of a condition of the kind specified in section 365(e)(1) of the Bankruptcy Code is not and cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court; and (iii) the Secured Intermediation Contracts constitute a "contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor" within the meaning of Sections 365(c)(2) and 365(e)(2)(B) of the Bankruptcy Code.

(f) MLC and PESIC are each oversecured as of the Petition Date, and accordingly, pursuant to Section 506(b) of the Bankruptcy Code, MLC and PESIC are entitled to interest and any reasonable fees, costs and expenses provided by the Secured Intermediation Contracts or applicable law; and

(g) all cash, securities or other property of the Refining Debtors (and the proceeds therefrom) as of the Petition Date, including all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Refining Debtors in any account or accounts with any depository institution (collectively, the "Depository Institutions"), were subject to rights of set-off and valid, perfected, enforceable SOA Prepetition Liens, for the benefit of the Protected Counterparties. All proceeds of the SOA Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes SOA Prepetition Collateral) are "cash collateral" of the Protected Counterparties in each case within the meaning of section 363(a) of the Bankruptcy Code (the "SOA Cash Collateral").

provided, that the foregoing Stipulations shall be binding on all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Refining Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Refining Debtors, in all circumstances and for all purposes (x) with respect to the Stipulations set forth in subparagraphs (e) and (f) above, upon entry of the Final Order, and (y) with respect to the Stipulations other than those set forth in subparagraphs (e) and (f) above, unless: (a) such committee or any other party in interest (subject in all respects to any agreement or applicable

law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court, has timely and properly filed an adversary proceeding or contested matter (i) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the liens of the Protected Counterparties or (ii) otherwise asserting or prosecuting any "lender liability" or equitable subordination claims or defenses or any other claims or causes of action arising under the Bankruptcy Code (collectively, a "Challenge Proceeding") against the Protected Counterparties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, predecessors and predecessors in interest, in each case in their respective capacity as such (each a "Representative" and, collectively, the "Representatives") in connection with matters related to the Intermediation Contracts and the Assurance Agreement by no later than a date (1) that is 75 days after entry of this Interim Order, (2) that is 60 days after the appointment of the official committee of unsecured creditors, if any, appointed in these chapter 11 cases (the "Creditors' Committee"), if any, or (3) on which the Bankruptcy Court confirms a plan of reorganization of Refining, or any such later date as has been agreed to, in writing, by the Protected Counterparties (such period, the "Challenge Period"), *provided* that, in the event that a Creditors' Committee or any other party files a motion seeking standing to pursue a Challenge Proceeding against any Protected Counterparties on or prior to the end of such Challenge Period, the Challenge Period shall be extended, solely with respect to the Challenge Proceeding for which such party seeks standing, to the date that is two business days after the Court rules on such standing motion; and (b) there is a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding. Any complaint or motion for standing filed in, or in

connection with, any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.

33. The Assurance Agreement and the provisions of this Interim Order shall be binding upon the Debtors, the Protected Counterparties and their respective successors and assigns (including any trustees appointed for the Debtors' estates) and inure to the benefit of the Protected Counterparties and Debtors (including any trustees hereafter appointed for the Debtors' estates in a proceeding under chapters 11 or 7 of the Bankruptcy Code) and their respective successors and assigns.

34. Notwithstanding any other provisions in this Interim Order, the benefits and protections of this Interim Order shall be extended to all existing positions and future intermediation activities, regardless of whether the transaction arose prior or subsequent to the Petition Date or matures after the expiration of this Interim Order or termination or liquidation of any Intermediation Contract.

35. This Interim Order shall be immediately effective and enforceable, and shall not be subject to any stay under Bankruptcy Rule 6004(h) or otherwise.

36. The Debtors shall, within three business days following the entry of this Interim Order, mail copies of this Interim Order and a notice of the final hearing on the Motion, to: (a) counsel to the DIP Lenders, (b) counsel to the DIP Agent, (c) counsel to the Refining ABL Agent, (d) counsel to the Refining TLB Agent, (e) counsel to the Logistics Agent, (f) counsel to MLC, (g) counsel to BTO Commodities, L.P. and PES Inventory Company, LLC, (h) the Internal Revenue Service, (i) the U.S. Trustee for the District of Delaware, (j) any other party that has filed a request for notices with the Court, in each case to allow actual receipt by the

27

foregoing no later than *February 2*, 2018 at [4]:00 p.m. (prevailing Eastern Time), and (k) any other party that has filed a request for notices with the Court.

37. The Court has scheduled a final hearing on *February 23, 2018* at *11:00 a.m.* consider the entry of a Final Order authorizing the relief requested in the Motion.

38. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) proposed counsel to the Debtors, (b) counsel to the DIP Lenders, (c) counsel to the DIP Agent, (d) counsel to the Refining ABL Agent, (e) counsel to the Refining TLB Agent, (f) counsel to the Logistics Agent , (g) counsel to MLC, (h) counsel to BTO Commodities, L.P. and PES Inventory Company, LLC, (i) the Internal Revenue Service, (j) the U.S. Trustee for the District of Delaware, (k) any other party that has filed a request for notices with the Court, in each case to allow actual receipt by the foregoing no later than *February 16*, 2018 at [4]:00 p.m. (prevailing Eastern Time).

39. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with the Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated: January *23*, 2018

HONORABLE KEVIN CROSS
UNITED STATES BANKRUPTCY JUDGE