**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| PES HOLDINGS, LLC, *et al.*,[1] | ) Case No. 18-10122 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

**CONSENT DECREE AND ENVIRONMENTAL SETTLEMENT AGREEMENT**

## I.    RECITALS

**WHEREAS**, on January 21, 2018, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, on January 22, 2018, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization of PES Holdings, LLC and its Debtor Affiliates* [Docket No. 9] (as amended from time to time, the "Plan")[2];

**WHEREAS**, the Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on January 23, 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. 76] authorizing the joint

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PES Holdings, LLC (8157); North Yard Financing, LLC (6284); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Logistics GP, LLC (9202); PES Logistics Partners, L.P. (1288); PESRM Holdings, LLC (2107); and Philadelphia Energy Solutions Refining and Marketing LLC (9574).  The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

[2]    Unless stated otherwise, defined terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

administration and procedural consolidation of these chapter 11 cases (the "<u>Bankruptcy Cases</u>") pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>");

**WHEREAS**, the Debtor Philadelphia Energy Solutions Refining and Marketing LLC ("<u>PESRM</u>"), a Delaware limited liability company formed in 2012, conducts all of the Debtors' refining operations;

**WHEREAS**, PESRM's primary asset is a refining complex ("<u>Refining Complex</u>") located on an approximately 1,300 acre tract of land near downtown Philadelphia, Pennsylvania, that holds the Debtors' two interconnected refineries, Girard Point and Point Breeze, which the Debtors contend represent approximately 28 percent of the United States' east coast's crude oil refining capacity;

**WHEREAS**, the Refining Complex produces a full range of transportation fuels, such as gasoline and ultra-low sulfur diesel, as well as other refined products, including home heating oil, jet fuel, kerosene, fuel oil, propane, propylene, butane, cumene, and sulfur;

**WHEREAS**, PESRM, as the owner and operator of the Refining Complex, is subject to Section 211(o) of the Clean Air Act ("<u>CAA</u>"), 42 U.S.C. § 7545(o), and the regulations prescribed thereunder at 40 C.F.R. Part 80, Subpart M (the "<u>RFS Regulations</u>");

**WHEREAS**, the RFS Regulations require obligated parties, which include refiners who produce gasoline or diesel fuel within the 48 contiguous states or Hawaii, to either blend renewable fuels into gasoline or diesel fuel or obtain Renewable Identification Numbers ("<u>RINs</u>") to meet Renewable Volume Obligations ("<u>RVOs</u>") set by the United States Environmental Protection Agency ("<u>EPA</u>") during each annual compliance period ("<u>Compliance Period</u>"), which runs from January 1 to December 31 of each year, and to retire such RINs by the compliance deadline as specified at 40 C.F.R. § 80.1451(a)(1) ( the "<u>Compliance Deadline</u>");

**WHEREAS**, the RFS Regulations allow obligated parties to carry their RVOs forward one year, provided they do not carry a deficit into the next year;

**WHEREAS**, PESRM carried a portion of its RVOs for the 2016 Compliance Period forward into 2017 (the "2016 Deficit Carryover");

**WHEREAS**, the RFS Regulations require PESRM to retire RINs in satisfaction of the 2016 Deficit Carryover and PESRM's RVOs for the 2017 Compliance Period (together with the 2016 Deficit Carryover, the "2016-2017 RVOs") by the Compliance Deadline for the 2017 Compliance Period, which is March 31, 2018;

**WHEREAS**, the Debtors currently project April 1, 2018 as the date on which the Debtors will emerge from the Bankruptcy Cases (April 1, 2018, or such other date, the "Effective Date");

**WHEREAS**, pursuant to and in accordance with this Settlement Agreement, PESRM will resolve and settle all obligations on account of its 2016-2017 RVOs and its pro rata RVOs for the portion of the 2018 Compliance Period from January 1, 2018 through the projected Effective Date (such actual amount, the "Pre-Effective Date 2018 RVOs" and, together with the 2016-2017 RVOs, the "Pre-Effective Date RVOs");

**WHEREAS**, PESRM contends that it has an inability to comply with its Pre-Effective Date RVOs due to its financial circumstances;

**WHEREAS**, the United States, on behalf of EPA, would have objected to the confirmation of the Plan, *inter alia*, based on the EPA's belief that the Plan failed to provide for compliance with the Debtors' Pre-Effective Date RVOs and failed to properly harmonize bankruptcy and environmental law;

**WHEREAS**, after the filing of the Bankruptcy Cases, the Debtors and the United States, on behalf of EPA (collectively, the "Parties"), entered into the *Stipulation and Agreed Order*

*Between the Debtors and the United States on Behalf of the Environmental Protection Agency Relating to Confirmation Scheduling* Order [Docket No. 125-1] filed on January 29, 2018 (the "Stipulation and Agreed Order"), pursuant to which, among other things: (a) the United States agreed to forbear until May 1, 2018 from commencing any enforcement action against Debtors and other parties set forth therein for the failure to retire sufficient RINs to satisfy the 2016-2017 RVOs; and (b) Debtors agreed to extend the date of confirmation of the Plan, to allow additional time for the Parties to negotiate a settlement to resolve the Parties' differing positions;

**WHEREAS**, the United States and the Debtors have negotiated this *Consent Decree and Environmental Settlement Agreement* (this "Settlement Agreement") to, among other things, provide for the complete satisfaction of the Debtors, Reorganized Debtors', and other Covered Entities' (as defined below) obligations under the CAA and the RFS Regulations with respect to the Pre-Effective Date RVOs as set forth herein and to provide for the early retirement of RINs by Reorganized Debtors after the Effective Date as provided herein;

**WHEREAS**, without admitting any liability of any entities listed below, the Debtors and Reorganized Debtors do recognize that they are obligated to comply with all requirements of this Settlement Agreement, the Debtors and the United States on behalf of EPA agree to enter into this Settlement Agreement in full satisfaction of all civil claims, obligations, liabilities, and causes of action (collectively, the "Causes of Action") pursuant to the CAA and the RFS Regulations with respect to the Pre-Effective Date RVOs by the United States on behalf of EPA against (a) the Debtors and Reorganized Debtors; (b) the Parent Parties; (c) the Term Loan A Lenders; (d) the Term Loan B Lenders; (e) the Term Loan A Agent; (f) the Term Loan B Agent; (g) the Intermediation Counterparties; (h) the Refining ABL Lenders; (i) the Refining ABL Agent; (j) the DIP Facility Lenders; (k) the DIP Facility Agent; (l) the DIP Commitment Parties; (m) the

Additional Financing Lender; (n) with respect to each of the foregoing entities in clauses (a) through (m), each such Entity's current and former predecessors, successors, affiliates (as that term is defined under section 101(2) of the Bankruptcy Code), subsidiaries, direct and indirect equityholders, funds, portfolio companies, and management companies; and (o) with respect to each of the foregoing Entities in clauses (a) through (n), each of their respective current and former directors, officers, members, employees, partners, and managers (with respect to clauses (b) through (n), each solely in their capacity as such) (clauses (a) through (o) together, the "<u>Covered Entities</u>");

      **WHEREAS**, the United States has reviewed financial information submitted by Debtors and determined that PESRM has limited ability to comply with its pre-Effective Date RVOs, and PESRM asserts that in the absence of a settlement or ruling against the United States' objections to the Plan, the Debtors would face a risk of liquidation;

      **WHEREAS**, the Parties agree to settle, compromise and resolve all disputes relating to the Pre-Effective Date RVOs as provided herein;

      **WHEREAS**, the United States has agreed to this Settlement Agreement based on the unique facts and circumstances present in these Bankruptcy Cases, and nothing in this Settlement Agreement shall be treated as having any precedential value in any other non-bankruptcy or bankruptcy matter (outside of these Bankruptcy Cases) with different facts and circumstances;

      **WHEREAS**, this Settlement Agreement shall be effective upon its approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 in connection with confirmation of the Plan;

      **WHEREAS**, this Settlement Agreement is fair and reasonable and in the public interest, and is an appropriate means of resolving these matters;

**NOW, THEREFORE**, without any adjudication on any issue of fact or law, and upon the consent and agreement of the Parties by their attorneys and authorized officials, it is hereby agreed as follows:

## II.    DEFINITIONS

1.    Terms used in this Settlement Agreement that are defined in the CAA or in the RFS Regulations shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Settlement Agreement.  Other terms used in this Settlement Agreement but not defined herein shall have the meaning ascribed to such terms in the Plan.

## III.    PARTIES BOUND; SUCCESSION AND ASSIGNMENT

2.    This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the signatories hereto, their legal successors and assigns, the Debtors, the Reorganized Debtors, and all other Covered Entities.  For purposes of this Settlement Agreement, any rights granted to the Debtors that extend after the Effective Date shall also be deemed granted to the Reorganized Debtors and their successors and assigns, subject to any reservations provided for herein.

## IV.    RINS RETIREMENT REQUIREMENTS

3.    PESRM shall retire a total of 138 million currently held RINs from its EPA Moderated Transaction System account within 3 business days of the Effective Date in full and final satisfaction of all liability under the CAA and the RFS Regulations in respect of the Pre-Effective Date RVOs.  PESRM shall retire this total in the following amounts:

   a.    1,458,177 D3 RINs;

   b.    57,569,049 D4 RINs; and

   c.    78,972,774 D6 RINs.

4.      The projected Effective Date is anticipated to be April 1, 2018.  However, if the Effective Date occurs on any date after April 10, 2018, PESRM will also retire by no later than 3 business days after the Effective Date an amount of RINs equal to its RVOs for the period from April 10, 2018, through the Effective Date.

5.      By no later than 3 business days after the Effective Date, PESRM shall also retire the remainder of the RINs held by PESRM on the Effective Date after giving effect to the RINs retirements referenced in Paragraphs 3 and 4 above, which amount shall apply as a credit towards satisfying the Reorganized Debtors' RVOs for the portion of the 2018 Compliance Period from the date after the Effective Date through December 31, 2018 (the "2018 Post-Effective Date RVOs").  The amount of RINs to be retired under this Paragraph 5 shall be no less than 64.6 million RINs less any RINs retired pursuant to Paragraph 4  of this Settlement Agreement.  The retirement of RINs under this Paragraph 5 shall apply notwithstanding the RINs use limitations set forth in 40 C.F.R. § 80.1427(a)(5).  Subsequent to the retirement of RINs under Paragraphs 3 and 4 and this Paragraph 5, PESRM shall use only 2018 RINs to meet the 2018 Post-Effective Date RVOs.

6.      Should PESRM determine, or be informed by EPA, that any RINs it retired towards satisfying the 2018 Post-Effective Date RVOs in accordance with Paragraph 5 above are invalid, subject to the provisions of 40 C.F.R. § 80.1474, PESRM shall retire an equivalent number of valid replacement RINs within 60 calendar days of that event.  Subject to the provisions of 40 C.F.R. § 80.1473, EPA may impose stipulated penalties under Paragraph 20 below, for PESRM's use of invalid RINs to meet the requirements of Paragraph 5 above with respect to the 2018 Post-Effective Date RVOs.

7.      PESRM shall not sell any RINs before the Effective Date other than the planned sale of up to $2.5 million of RINs pursuant to the *Final Order (I) Authorizing Continuation of*

*Prepetition Intermediation Agreements, (II) Authorizing the Debtors to Enter Into and Perform Postpetition Intermediation Transactions, (III) Providing Superpriority Administrative Expense Status in Respect of Intermediation Transactions, (IV) Providing First Priority Liens in Respect of Secured Intermediation Contracts, (V) Modifying the Automatic Stay and (VI) Granting Related Relied* (the "Intermediation Order") [Docket No. 219].

8.      After the Effective Date, PESRM shall retire RINs to satisfy its Post-Effective Date RVOs, including the 2018 Post-Effective Date RVOs, on a semiannual basis through the Compliance Period ending December 31, 2022, with a retirement deadline of March 31, 2023 for that final Compliance Period, according to the following schedule:

a.      PESRM shall retire RINs by September 30 of each year to satisfy its RVOs for the January 1 to June 30 portion of that year.

b.      PESRM shall retire RINs by March 31 of each year to satisfy its RVOs for the July 1 to December 31 portion of the preceding year.

c.      In the event EPA has not set the Renewable Fuel Standards for a future Compliance Period by the retirement deadlines specified in subparagraphs 8.a and 8.b above, PESRM shall retire RINs for such Compliance Period by the deadlines set forth in Paragraphs 8.a and 8.b above in an amount determined as if the most recent preceding yearly Renewable Fuel Standards set pursuant to 40 C.F.R. § 80.1405 were applicable for that Compliance Period.

d.      If the scenario under subparagraph 8.c occurs and PESRM has under complied with its RVOs based on the newly set Renewable Fuel Standards, PESRM shall retire the required amount and type of RINs to meet its RVOs

within 30 calendar days of the effective date of the newly set Renewable Fuel Standards.

e.     If the scenario under subparagraph 8.c occurs and PESRM has over complied with its RVOs based on newly set Renewable Fuel Standards, EPA will reinstate the appropriate number and type of RINs with which PESRM has over complied.

f.     If the scenario under subparagraph 8.c occurs, within 30 days of RIN retirement or RIN reinstatement, PESRM shall revise and resubmit the RINs Retirement Reports required by this Consent Decree and Environmental Settlement Agreement under Paragraphs 9 and 10, as applicable, based on the newly set Renewable Fuel Standards.

9.     Within 15 calendar days of retiring RINs under Paragraph 8.a, PESRM shall submit to the United States a semi-annual compliance report (a "RINs Retirement Report") for the period covering January 1 to June 30 that documents: (a) RVO category (e.g., cellulosic biofuel, biomass-based diesel, advanced biofuel, total renewable fuel); (b) gasoline and diesel production/import volume; (c) total RVO amount; and (d) quantity of RINs retired in each RVO category.

10.    Within 15 calendar days of retiring RINs under Paragraph 8.b, PESRM shall submit to the United States an annual compliance report (also a "RINs Retirement Report") covering January 1 to December 31 of the preceding year that documents: (a) RVO category (e.g., cellulosic biofuel, biomass-based diesel, advanced biofuel, total renewable fuel); (b) gasoline and diesel production/import volume; (c) total RVO amount; and (d) quantity of RINs retired in each RVO

category. This Paragraph does not relieve PESRM of its obligation to submit an annual compliance

report as required by 40 C.F.R. § 80.1451(a)(1).

11.    The RINs Retirement Reports under Paragraphs 9 and 10 should be sent to the

attention of:

> U.S. Environmental Protection Agency
> Fuels Enforcement Branch, Chief
> 1595 Wynkoop Street, MC 8MSU
> Denver, CO  80202

12.    The RINs Retirement Reports required by Paragraphs 9 and 10  shall be signed and

certified by such corporate officer of PESRM that is authorized to make such certification(s) on

behalf of PESRM. The certification required under shall include the following statement:

> I certify under penalty of law that I have examined and am familiar with the
> information submitted in this document and all attachments and that this document
> and all attachments were prepared under my direction or supervision in accordance
> with a system designed to assure that qualified personnel properly gather and
> evaluate the information submitted. Based on my inquiry of the person or persons
> who manage the system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my knowledge and belief,
> true, accurate, and complete. I am aware that there are significant penalties for
> submitting false information, including the possibility of fines and imprisonment
> for knowingly and willfully submitting a materially false statement.

13.    The reporting requirements of this Settlement Agreement do not relieve PESRM of

any reporting obligations required by the CAA or the RFS Regulations, or any other reporting

obligation required by any federal, state, or local law, regulation, permit, or other requirement.

14.    Any information submitted pursuant to this Settlement Agreement may be used by

the United States in any proceeding to enforce the provisions of this Settlement Agreement and as

otherwise permitted by law.

15.    If PESRM fails to retire RINs by the compliance deadlines set forth in Paragraph 8

in any period or fails to submit a RINs Retirement Report by the reporting deadlines set forth in

Paragraphs 9 and 10, PESRM shall be liable for stipulated penalties under Section V below.  In addition, the requirements of Paragraphs 8, 9 and 10  shall be extended for an additional six months beyond December 31, 2022 (including extension of the corresponding RINs retirement date to no later than March 31 or September 30 as applicable) for each such violation.  The United States, however, may not impose any penalties on the Debtors, the Reorganized Debtors, or any other Covered Entities for Pre-Effective Date RVOs, if PESRM complies with Paragraphs 3,4,5, and 7 of this Settlement Agreement.

16.     PESRM may not avail itself of the deficit carryover provision under 40 C.F.R. § 80.1427(b) for any Compliance Period after the Effective Date up to and including the 2022 Compliance Period and any extension period under Paragraph 15.

## V.    STIPULATED PENALTIES

17.     PESRM shall be liable for stipulated penalties to the United States for violations of this Settlement Agreement as specified below, unless reduced by the United States in its unreviewable discretion.  A violation includes failing to perform any obligation required by the terms of this Settlement Agreement according to all applicable requirements of this Settlement Agreement and within the specified time schedules established by or approved under this Settlement Agreement.

18.     If PESRM fails to fully comply with the RINs retirement requirements in Paragraphs 3,4,5, and 8, PESRM shall pay a stipulated penalty of $10,000 per calendar day per RVO for each calendar day that PESRM is late meeting its RINs retirement requirements for calendar days 1-5, and $46,192 per calendar day per RVO for each calendar day thereafter.

19.     If PESRM fails to full comply with the RINs Retirement Report requirements in Paragraphs 9 or 10, PESRM shall pay a stipulated penalty of $1,000 per calendar day for each

calendar day that PESRM is late meeting such requirements for calendar days 1-14, $5,000 for calendar days 15-30, and $10,000 for each calendar day thereafter.

20.     For the use of invalid RINs under Paragraph 5 above, EPA may in its unreviewable discretion require PESRM to pay a one-time stipulated penalty of up to $0.40 per invalid RIN.

21.     Stipulated penalties under this Section V shall begin to accrue on the calendar day after performance is due or on such day that the violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue regardless of whether the United States provides PESRM notice of the violation(s) of this Settlement Agreement.

22.     PESRM shall pay any stipulated penalty within 30 calendar days of receiving the United States' written demand in accordance with the payment instructions provided in the demand.

23.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Settlement Agreement.

24.     If PESRM fails to pay stipulated penalties according to the terms of this Settlement Agreement, PESRM shall be liable for interest on such penalties accruing as of the date such payment became due in accordance with the statutory judgment interest rate as provided in 28 U.S.C. § 1961.  The interest shall be computed daily from the time the payment is due until the date the payment is made.  The interest shall also be compounded annually.  Nothing in this Paragraph 24 shall be construed to limit the United States from seeking any remedy otherwise provided by law for PESRM's failure to pay any stipulated penalties.

25.     The payment of stipulated penalties and interest, if any, shall not alter in any way PESRM's obligation to complete the performance of the requirements of this Settlement Agreement.

26.     PESRM shall not deduct any stipulated penalties paid under this Settlement Agreement in calculating its federal, state, or local income tax.

## VI.    FORCE MAJEURE

27.     "Force Majeure," for purposes of this Settlement Agreement, is defined as any event arising from causes beyond the control of PESRM, of any entity controlled by PESRM, or of PESRM's contractors that delays or prevents the performance of any obligation under this Settlement Agreement despite PESRM's best efforts to fulfill the obligation. The requirement that PESRM exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. Force Majeure does not include PESRM's financial inability to perform any obligation under this Settlement Agreement.

28.     If any event occurs or has occurred that may delay the performance of any obligation under this Settlement Agreement, whether or not caused by a Force Majeure event, PESRM shall provide notice orally or by electronic or facsimile transmission to the United States within 72 hours of when PESRM first knew that the Force Majeure event might cause a delay. Within 7 calendar days thereafter, PESRM shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; PESRM's

rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of PESRM, such event may cause or contribute to an endangerment to public health, welfare or the environment.  PESRM shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude PESRM from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. PESRM shall be deemed to know of any circumstance of which PESRM, any entity controlled by PESRM, or PESRM's contractors knew or should have known.

29.    The time for performance of the obligations under this Settlement Agreement that are affected by the Force Majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify PESRM in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

## VII.    COVENANT NOT TO SUE

30.    With respect to the Pre-Effective Date RVOs, except as specifically provided in Section VIII herein, upon the Effective Date and PESRM's retirement of RINs as set forth in Paragraphs 3 and 4 of this Settlement Agreement, the United States on behalf of EPA covenants not to sue or assert any civil claims or Causes of Action against the Debtors, the Reorganized Debtors, or any other Covered Entities and their successors and assigns pursuant to the CAA and the RFS Regulations.  With respect to the portion of the 2018 Post-Effective Date RVOs for which PESRM retires RINs pursuant to Paragraph 5 hereof, except as specifically provided in Section VIII herein, upon the Effective Date and PESRM's retirement of RINs as set forth in

Paragraph 5 of this Settlement Agreement, the United States on behalf of EPA covenants not to sue or assert any civil claims or Causes of Action against the Debtors, the Reorganized Debtors, or any other Covered Entities and their successors and assigns pursuant to the CAA and the RFS Regulations with respect to the portion of the 2018 Post-Effective Date RVOs for which PESRM retires RINs pursuant to Paragraph 5 hereof.  Nothing in this Settlement Agreement shall create or imply that any Covered Entities other than PESRM have or do not have any liability under the CAA or the RFS Regulations.  For the avoidance of doubt, all references to "successors" and "assigns" in this Paragraph shall include successor subsidiaries or successor affiliated entities, and assignee subsidiaries or assignee affiliated entities.

31.     This Settlement Agreement in no way impairs the scope and effect of Debtors' discharge under section 1141 of the Bankruptcy Code with respect to any dischargeable liabilities under the CAA or the RFS Regulations, provided however, for the avoidance of doubt, Reorganized Debtors shall comply with all provisions of this Settlement Agreement.

## VIII.   RESERVATION OF RIGHTS

32.     The covenant not to sue set forth in Section VII does not pertain to any matters other than those expressly specified therein.  The United States specifically reserves, and this Settlement Agreement is without prejudice to: (a) any action to enforce the terms of this Settlement Agreement; (b) liability for civil penalties and injunctive relief for the Debtors' or the Reorganized Debtors' or the other Covered Parties' post-Effective Date acts, if any, creating liability under the CAA or RFS Regulations, or under other federal laws, regulations, or permit conditions; and (c) any criminal liability.

33.     Debtors certify under penalty of perjury that the financial information that they have provided to the United States fairly and accurately sets forth Debtors' financial circumstances

in all material respects as of the respective dates thereof.  This Settlement Agreement shall be subject to Federal Rule of Civil Procedure 60(b).

34.    This Settlement Agreement shall not be construed to create rights in, or grant any cause of action to, any third party not Party to this Settlement Agreement other than as explicitly set forth herein; provided that the Covered Entities shall be third party beneficiaries of this Settlement Agreement.

## IX.    PUBLIC COMMENT

35.    This Settlement Agreement will be subject to a public comment period of 10 calendar days following notice published in the Federal Register. The United States reserves the right to withdraw or withhold its consent prior to approval of the Settlement Agreement by the Bankruptcy Court if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement is inappropriate, improper, or inadequate.

## X.    JUDICIAL APPROVAL

36.    The settlement reflected in this Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  The Debtors shall move promptly for Bankruptcy Court approval of this Settlement Agreement in connection with confirmation of the Plan and shall exercise commercially reasonable efforts to obtain such approval.

## XI.    RETENTION OF JURISDICTION

37.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the Parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court at any time for such further order, direction, and relief as may be necessary

or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

## XII.    EFFECTIVE DATE

38.    Following a public comment process provided for in Paragraph 35, this Settlement Agreement shall be effective upon approval by the Bankruptcy Court in connection with confirmation of the Plan.  The Debtors shall incorporate the terms of this Settlement Agreement into the Plan.

39.    If for any reason (a) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 35 or (b) the Settlement Agreement is not approved:  (w) this Settlement Agreement shall be null and void and the Parties shall not be bound hereunder; (x) the Parties shall have no liability to one another arising out of or in connection with this Settlement Agreement; (y) the Parties will seek a new schedule from the Court for confirmation of a Plan and any objections thereto; and (z) this Settlement Agreement shall have no residual or probative effect or value, and it shall be as if it had never been executed.

## XIII.   PLAN OF REORGANIZATION

40.    The Debtors shall not file a Plan or amend the Plan or the proposed order confirming the Plan in a manner inconsistent with the terms and provisions of this Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Settlement Agreement.  The United States on behalf of EPA shall not oppose or object to any provision of a Plan or an order confirming the Plan on grounds addressed by this Settlement Agreement provided that such provision is consistent with this Settlement Agreement.  In the event of any inconsistency between the Plan and this Settlement Agreement,

the terms of this Settlement Agreement shall control.  In the event of any inconsistency between the Confirmation Order and this Settlement Agreement, the Settlement Agreement shall control.

## XIV.    <u>AMENDMENTS/INTEGRATION AND COUNTERPARTS</u>

41.    This Settlement Agreement and any other documents to be executed in connection herewith or referred to herein shall constitute the sole and complete agreement of the Parties hereto with respect to the matters addressed herein. This Settlement Agreement may not be amended except by a writing signed by all the Parties.

42.    The signatories for the Parties each certify that he or she is authorized to enter into the terms and conditions of this Settlement Agreement after the close of the applicable comment period and provision of comments by the United States to the Court, and to execute and bind legally such party to this document.

43.    This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.


THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT.

In re: PES HOLDINGS, LLC, *et al.*

FOR THE UNITED STATES OF AMERICA:

Date: <u>3/12/18</u>

<u>/s/ Jeffrey H. Wood</u>
JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

ALAN S. TENENBAUM
National Bankruptcy Coordinator
ROBERT DARNELL
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
alan.tenenbaum@usdoj.gov
(202) 514-5409
robert.darnell@usdoj.gov
(202) 514-4162

In re: PES HOLDINGS, LLC, *et al.*


FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date: <u>3/12/18</u>              <u>/s/ Susan Parker Bodine</u>
                                  SUSAN PARKER BODINE
                                  Assistant Administrator
                                  Office of Enforcement and Compliance Assurance
                                  U.S. Environmental Protection Agency
                                  1200 Pennsylvania Avenue, N.W.
                                  Washington, DC  20460

In re: PES HOLDINGS, LLC, *et al.*


FOR DEBTORS AND DEBTORS IN POSSESSION:


Date: <u>3/12/18</u>          <u>/s/ Thomas Scargle</u>
                      THOMAS SCARGLE
                      President & Chief Operating Officer
                      Philadelphia Energy Solutions Refining and Marketing LLC
                      PES Holdings, LLC
                      1735 Market Street, 11th Floor
                      Philadelphia, PA 19103
                      thomas.scargle@pes-companies.com